UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD and<br>BUZZFEED INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 19-2796 (JEB) |

### MEMORANDUM OPINION

Plaintiffs Jason Leopold and BuzzFeed Inc. brought this Freedom of Information Act suit to obtain certain documents related to Special Counsel Robert Mueller's investigation into the 2016 presidential election. During the course of the litigation, the parties have narrowed their dispute to the sole issue of whether the Government sufficiently documented foreseeable harm in relation to its withholdings under the deliberative-process privilege of Exemption 5. Holding in the affirmative, the Court delivers a decision for Defendant.

**I.    Background**

One of the Plaintiffs, Jason Leopold, is a senior investigative reporter for co-Plaintiff BuzzFeed News, which is a self-described "global news organization providing original online reporting and video programming across the internet's biggest platforms." About BuzzFeed News, BuzzFeed News, https://www.buzzfeednews.com/article/buzzfeednews/about-buzzfeed-news. At issue here are two specific FOIA requests Plaintiffs made following the 2016 election. The Court will provide a brief introduction to both before proceedings to its analysis.

1

A. Page/Strzok Request

In 2017, Plaintiffs submitted a request to the Department of Justice and a number of its components seeking "any and all documents, including but not limited to emails, mentioning or referring to congressional inquiries of [the text messages between FBI agent Peter Strzok and FBI Attorney Lisa Page] and the individuals who sent and received them." ECF No. 1 (Compl.), ¶ 6. On January 10, 2018, DOJ acknowledged receiving the request, but asserted that, given "unusual circumstances," it would "need to extend the time limit to respond to [the] request beyond the additional ten days provided by the statute." ECF No. 1-2, Exh. B (Brittnie R. Baker 1/10/18 Letter) at 1. Defendant ultimately found three general categories of documents responsive to this request: 1) draft responses to and discussions about congressional and press requests surrounding the text messages; 2) the draft of a memorandum regarding the legal consequences of releasing the text messages; and 3) intra-agency emails discussing how to process any personal information within the texts. See ECF No. 22-1 (Def. MSJ) at 9–13.

Justice, through its Office of Information Policy (OIP), issued its final response to Plaintiffs' Page/Strzok Request on October 29, 2019, informing them that it had found, and would release, 611 pages of responsive records, 516 of them in full and 95 in part. See ECF No. 22-2 (Vanessa R. Brinkmann Declaration), ¶¶ 7–9. On December 8, 2020, OIP informed Plaintiffs that it had discovered an additional 124 pages responsive to their request. Id., ¶ 8. Of these, OIP withheld two pages in full and one in part under the deliberative-process privilege and 121 pages in full under the attorney-client privilege. Id., ¶ 8. In total, then, OIP released 516 pages in full and 96 pages in part, and it withheld 123 pages in full under Exemption 5. Id., ¶¶ 7–9.

B.  Mueller Request

On May 17, 2019, the Office of Legal Counsel (OLC), a part of the Department of Justice, received an additional FOIA request from Plaintiffs. See ECF No. 22-3, Exh. B (Leopold 5/17/19 Email). There Plaintiffs requested "[a]ll letters, emails, memos, reports, legal opinions mentioning or referring to Robert Mueller's testimony before Congress" and "[a]ll records, including emails, memos, letters, legal opinions, and reports, exchanged between [OLC] and the Office of the Attorney General memorializing discussions relating to Robert Mueller's testimony before Congress." Id. In its subsequent search, Defendant found two categories of responsive records. The first contained intra-agency discussions regarding DOJ's responses to potential congressional requests for Mueller's testimony. See Def. MSJ at 18–19. The second comprised agency notes from a March 28, 2019, call involving Mueller, then-Attorney General William P. Barr, and then-Deputy Attorney General Rod J. Rosenstein, among others, regarding the Department's eventual publication of the Report on the Investigation into Russian Interference in the 2016 Presidential Election (better known as The Mueller Report), potential redactions to the Report, and the Department's public statements that might accompany the Report's release. Id. at 19–20.

Following the search, OLC located a total of 312 pages of responsive records, released 65 with partial withholdings, and withheld in full 16 pages pursuant to Exemption 5. See ECF No. 22-3, Exh. D (Paul P. Colborn 3/12/20 Letter) at 1. It referred the remaining 231 pages to OIP, which then processed them on a rolling basis. See Brinkmann Decl., ¶ 12. In total, "OIP released 114 pages with partial withholdings pursuant to Exemptions 5, 6, and 7(C), withheld in full 38 pages pursuant to Exemption 5," and found that the other 79 pages were duplicates. See Def. MSJ at 4.

3

Plaintiffs were initially dissatisfied with the way their requests were handled for several reasons. See ECF No. 24 (Pl. Opp./Cross-MSJ) at 1–2. As the case progressed, however, they dropped various arguments and now contend only that Defendant has not sufficiently shown that foreseeable harm would result from the disclosure of its withholdings under Exemption 5's deliberative-process privilege. See ECF No. 30 (Pl. Reply) at 1. In particular, Plaintiffs believe that the Government cannot properly apply its justifications to categories of documents, but rather must offer them "document-by-document." Id.

**II.    Legal Standard**

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).  Summary judgment is only proper when the court is assured that the record justifies the result.  See Ctr. For Investigative Reporting v. U.S. Customs & Border Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

**III.   Analysis**

"Congress enacted the Freedom of Information Act ('FOIA'), 5 U.S.C. § 552, to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988)).  To balance the public interest in government transparency with the interests that could be harmed by the release of

5

certain information, "FOIA has nine exemptions, set forth in 5 U.S.C. § 552(b)." Ctr. for Investigative Reporting, 436 F. Supp. 3d at 98.

At issue here is Exemption 5, which applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, under Exemption 5, an agency may withhold from a FOIA requester any "documents[] normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984). The only Exemption 5 privilege contested here is the deliberative-process privilege, which permits withholding "predecisional" and "deliberative" agency records, Access Reps. v. Dep't of Justice, 926 F.2d 1192, 1194 (D.C. Cir. 1991), to protect the free exchange of "opinions, ideas, and points of view" within an agency's operations and decisionmaking processes. Ackerly v. Ley, 420 F.2d 1336, 1341 (D.C. Cir. 1969). "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." Sears, 421 U.S. at 151.

Even more narrowly, Plaintiffs challenge only DOJ's application of the "foreseeable-harm" standard. This standard dictates that an agency may withhold information that falls within a FOIA exemption's scope "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" the exemption at issue. See 5 U.S.C. § 552(a)(8)(A)(i)(I); see also Reporters Committee for Freedom of Press v. FBI, No. 20-5091, 2021 WL 2753938, at *12 (D.C. Cir. July 2, 2021) (The agency invoking an exemption must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward.") (emphasis added); see also Ctr. for Investigative Reporting, 436 F. Supp. 3d at

6

106 (explaining that agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "connect [such] harms in a meaningful way to the information withheld") (cleaned up) (citation omitted).

In this case, the Court must answer two questions. First, may the Government use a categorical — as opposed to a document-by-document — approach in outlining foreseeable harm? Second, even if it may, did DOJ appropriately do so here?

A.  Categorical Approach

Plaintiffs acknowledge that courts in this district have adopted a categorical approach in assessing foreseeable harm, but they urge this Court to forgo that conception in favor of a document-by-document approach. See Pl. Opp./Cross-MSJ at 5; Pl. Reply at 1. While they understandably did not have the benefit of a Circuit decision issued just this month, that appellate guidance forecloses their position. In Reporters Committee for Freedom of the Press, which concerned the deliberative-process privilege, the Court of Appeals stated that "agencies may sometimes satisfy [the foreseeable-harm] burden on a category-by-category basis . . . that is, group together like records." 2021 WL 2753938, at *12 (internal quotation marks and citations omitted). If DOJ can "concretely explain how disclosure [of a particular category] 'would' — not 'could' — adversely impair internal deliberations," id., therefore, that would be enough for this Court to rule in the Government's favor.

B.  Foreseeable Harm

Even where Exemption 5 applies and a categorical approach suffices, an agency must still "provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm'" to successfully show that disclosure would cause foreseeable harm. Ctr.

7

For Investigative Reporting, 436 F. Supp. 3d at 106 (quoting Jud. Watch, Inc. v. U.S. Dep't of Justice, No. 17-832, 2019 WL 4644029, at *4 (D.D.C. 2019)).

Here, the Court finds that for each category of documents, DOJ explains the harms with enough specificity so as to render its reasoning not "boilerplate." Cf. Sierra Club v. U.S. Fish & Wildlife Serv., No. 19-2315, 2021 WL 765727, at *8 (D.D.C. 2021) ("boilerplate [statement] that release in general 'would cause a chilling effect to the agency and would stifle internal communications'" insufficient to support Exemption 5 withholding in absence of "a more robust justification") (citation omitted). The Government sews a sufficient thread of reasoning between each withheld category of documents and the particular potential harm that would result from its release.

Plaintiffs principally maintain that because the reasoning for differing categories often overlaps, it is by nature "boilerplate." Pl. Reply at 2. Yet such a position asks this Court to treat Defendant's foreseeable-harm arguments as matchsticks that find themselves useless after a short time aflame. Played out to its conclusion, Plaintiffs' logic would place an untenable burden on Defendant: after using one reason for a particular category, it would be barred from using similar reasoning elsewhere. While "nearly identical boilerplate statements" of harm are insufficient, see Jud. Watch, Inc., 2019 WL 4644029, at *4, the mere recitation of similar reasoning in showing harm does not by itself render that reasoning "boilerplate." If Defendant can specifically and successfully argue why a given reason applies to one category, the Court will not require a completely different rationale for others.

    C.    Document Analysis

        1.    *Page/Strzok Request*

The Page/Strzok Request involves three general categories of documents: draft responses to congressional requests and inquiries, the draft of a memorandum providing legal advice, and discussions involving the handling of personal information.

      a. Draft Responses to Congressional Requests and Inquiries

Defendant withheld portions of intra-DOJ discussions and drafts regarding the development of a strategy for responding to congressional and press requests surrounding the Page/Strzok text messages. See Def. MSJ at 17. Justice argues that release of the drafts would likely deter "employees' future willingness 'to share their preliminary assessments and ideas'" and foster confusion among members of the public. See ECF No. 26 (Def. Opp./Reply) at 9 (quoting ECF No. 26-1 (Sec. Brinkmann Decl.), ¶ 13). To further elaborate, "[w]ithin each of these records, DOJ staff are discussing the drafting of a response to Congressional requests for the Page/Strzok text messages." Brinkmann Decl., ¶ 34. These discussions were not indicative of any final response but were simply deliberations on what the final response should be. Id.

Plaintiff rejoins that "OIP's declaration provides only general categorical statements that do not specifically link the different subcategories of documents 'in a meaningful way' to the alleged harm." Pl. Opp./Cross-MSJ at 5 (citation omitted). The genesis of Plaintiff's quoted "meaningful way" standard is found in Judicial Watch, Inc., 2019 WL 4644029, at *5, where the court concluded that the Government could meet the standard by "providing context or insight into the specific decision-making or deliberations at issue, and how they in particular would be harmed by disclosure." This is precisely what the Government did here. The Court agrees with DOJ that the release of these discussions, especially given the high-profile and sensitive nature of this case, would dampen the free exchange of ideas within the agency. This would ultimately

9

damage the intra-agency decisionmaking process and the public perception of the department, see Brinkmann Decl., ¶¶ 37–38, 69, two harms that Exemption 5 expressly safeguards against.

### b. Draft of Memorandum Providing Legal Advice

DOJ also withheld portions of a memorandum authored by then-Associate Deputy Attorney General Scott Schools to Acting Chief Privacy and Civil Liberties Officer Peter Winn in response to a request for legal advice. See Sec. Brinkmann Decl., ¶ 26. According to Defendant, disclosure of these communications "would undermine the ability of Department staff to freely . . . collaborat[e and develop] . . . well-reasoned and accurate final documents." Id. While these harms echo those relating to the congressional requests, Justice explains that they would also arise from the disclosure of the memorandum. Id. ("By exposing these confidential discussions in which advice was formulated and conveyed to senior Department decision-makers, the Department's ability to engage in effective decision-making would be severely inhibited. The ability of the Department's senior leadership to obtain . . . the highest-quality written advice . . . depends upon uninhibited creative exchange among employees to formulate and evaluate such advice."). The Court therefore finds that Defendant has satisfied its burden to show that withholding the legal memorandum satisfies the foreseeable-harm standard.

### c. Discussions Involving Handling of Personal Information

Defendant next withheld internal email communications consisting of FBI staff's preliminary opinions and recommendations for how to process certain personal information within the Page/Strzok texts. See Brinkmann Decl., ¶ 49. True, DOJ again cites some of the same harms here — namely, public confusion and hampering intra-agency productivity — to justify the applicability of Exemption 5. See Sec. Brinkmann Decl., ¶ 18. But, again, instead of cutting and pasting boilerplate explanations, it carefully outlines the specific foreseeable harm

that would be caused by release of this particular document.  Compare id., (Disclosure of these documents "would severely harm the efficient day-to-day workings of the Department, as Department staff engaging in these discussions would no longer feel free to discuss their ideas and strategies among one another, or provide advice to those in decision-making positions."), with Sierra Club, 2021 WL 765727, at *8 (government only mentions "chilling effect" and non-specific fear of confusion to support withholdings).  The Court accepts Defendant's reasoning that Plaintiffs' requested disclosure would undermine the ability for DOJ officials to both have frank discussions about issues in the future and provide the public with a unified response after such deliberations have been completed.  See Sec. Brinkmann Decl., ¶ 18.

        2. *Mueller Request*

The Mueller Request involves two general categories of information: discussions regarding the response to congressional requests for his testimony, and notes from a March 28, 2019, call concerning his ultimate report on the 2016 election.

        a.    Potential Response to Congressional Requests

In withholding intra-agency communications discussing "possible responses to congressional requests for testimony by [Mueller]," Colborn Decl., ¶ 27, DOJ contends that the release of these draft documents would diminish the strength of final agency decisions "if the Department could no longer rely on a . . . deliberative process where employees in components feel free to share their advice, expertise, and recommendations within Department leadership." Sec. Brinkmann Decl., ¶ 21.  This would, in turn, undermine the Government's ability to effectively manage its relationship with the Legislative Branch and the public.  Id.  The Court believes that this is sufficient to conclude that Defendant has met its burden of demonstrating foreseeable harm as to these documents as well.

> b. March 28, 2019, Call

Finally, DOJ withheld as privileged notes from a March 28, 2019, call concerning the Department's eventual release to Congress and the public of the Mueller Report, potential redactions to be made to the Report, and the Department's future public statements about it. See Def. MSJ at 19. Defendant again determined that release would cause foreseeable harm to agency decisionmaking. See Sec. Brinkmann Decl., ¶ 22. This Court agrees. The forced disclosure of handwritten and typed notes regarding an off-the-record phone call would prevent agency employees from memorializing their "minute-by-minute ideas or instant impressions." Id. In addition, disclosure would risk public confusion inasmuch as these notes would be incorrectly interpreted by the general public as the official thoughts of the Department, instead of correctly understood as the preliminary thoughts of different individuals. Id.

The Court thus finds Defendant has met its burden in showing that release of each category of documents would foreseeably and adversely affect future intra-agency decisions and operations. See Nat'l Inst. of Mil. Justice v. U.S. Dep't of Defense, 512 F.3d 677, 680 (D.C. Cir. 2008) ("[E]xemption [5] was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity.") (quoting Ryan v. Dep't of Justice, 617 F.2d 781, 789 (D.C. Cir. 1980)).

## IV. Conclusion

For the reasons set forth above, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Cross-Motion. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 23, 2021